**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD and CONTINENTAL CASUALTY COMPANY, | CIVIL ACTION NO. 3:CV-14-1570 (JUDGE CAPUTO) |
| Plaintiffs, | |
| v. | |
| GABE'S CONSTRUCTION COMPANY, INC. | |
| Defendant. | |
| ------------------------------------------------------------ | |
| GABE'S CONSTRUCTION COMPANY, INC. | |
| Counterclaim Plaintiff, | |
| v. | |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD and CONTINENTAL CASUALTY COMPANY, | |
| Counterclaim Defendants. | |

**MEMORANDUM**

Presently before the Court are a Motion for Summary Judgment filed by Plaintiffs and Counterclaim Defendants Continental Casualty Company and National Fire Insurance Company of Hartford (collectively, the "insurance companies") (Doc. 17) and a Cross-Motion for Summary Judgment filed by Defendant and Counterclaim Plaintiff Gabe's Construction Company, Inc. ("Gabe's") (Doc. 22). The parties seek a judicial determination as to the parties' rights and obligations under policies issued by the insurance companies to Gabe's with respect to pending Pennsylvania state court litigation in which Gabe's is a cross-claim defendant. Because the underlying cross-claim does not allege that the claimed damage was caused by an "occurrence" as defined in the policies, the insurance companies do not have a duty to defend Gabe's. National and Continental's Motion for Summary Judgment (Doc. 17) will be granted. Gabe's Cross-Motion for Summary Judgment (Doc. 22) will be denied.

# I. Background

Plaintiffs National and Continental are insurance companies that each issued an insurance policy to Defendant Gabe's, a construction company. Gabe's has sought defense and/or indemnity for litigation currently pending in Pennsylvania state court. National and Continental assert that the policies they issued do not cover this underlying litigation. The parties seek a judicial determination as to the parties' rights and obligations under the policies issued by National and Continental with respect to this underlying litigation.

## A. The Underlying Suit

The instant action arises out of a lawsuit presently pending in Pennsylvania State Court in Monroe County: *Linde Corporation v. RKR Hess Associates, Inc., et al.*, No. 4254-cv-2012, in which Pocono Township has asserted a cross-claim against Gabe's ("Pocono Township litigation," "underlying litigation"). (Doc. 19; ¶ 2.) A copy of Pocono Township's most recent cross-claim against Gabe's is attached as Exhibit 1 to an Affidavit by Gabe's counsel in support of its Motion for Summary Judgment (Doc. 22-3). Pocono's cross-claim against Gabe's was filed in January, 2014, and amended in March 2014. (Doc. 23, ¶¶ 3-4.)

The cross-claim arises from Gabe's work as a drilling subcontractor installing sewer pipes. (Doc. 22-3, ¶¶ 323-37.) Linde Corporation ("Linde") had a construction contract with Pocono Township. (Doc. 23, ¶ 2.) Linde contracted with Gabe's for the installation of a portion of sewer pipe associated with this contract. (*Id.*) Pocono Township asserts a number of claims against Gabe's for breach of warranty, indemnification, and promissory estoppel, and requests millions of dollars in damages and court costs. (Doc. 24, ¶ 3)

The parties characterize the cross-claim differently. The insurance companies assert that Gabe's is being sued for its faulty workmanship. (Doc. 19, ¶ 12.) Because faulty workmanship does not constitute an occurrence as defined in the policies, they have no obligation to defend or indemnify Gabe's in the underlying litigation. (*Id.* at ¶ 13.) Gabe's asserts that the cross-claim "alleges more than simply faulty workmanship," and is a claim based on an "occurrence" as defined by the two policies. (Doc. 24, ¶¶ 12-13.) Additionally,

Gabe's notes that in the insurance companies' Motion for Summary Judgment and Statement of Facts, Plaintiffs rely on an outdated version of the cross-claim. (*Id*. at ¶ 12.)

**B. The Policies**

Seeking defense and potentially indemnification in the underlying suit, Gabe's made a claim for insurance coverage under a General Liability policy issued by National, Policy U4015485914, which provided coverage from January 1, 2012 to January 1, 2013. (Doc. 19, ¶ 6.) National agreed to participate in Gabe's defense subject to a reservation of rights. (*Id.*) Continental issued Gabe's a commercial umbrella policy, Policy U4015485878, which provided coverage from January 1, 2012 to January 1, 2013. (*Id.* at ¶ 9.)

**1. National Policy**

The National policy is a Commercial General Liability policy. The parties agree that the policy covers "property damage" caused by an "occurrence." (Doc. 23, ¶ 11.) Gabe's asserts that it is entitled to coverage under this section. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 22-5, 3.) "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

*Id.* The policy has a "your work" exclusion, stating that it "does not apply to":

> **J. Damage to Property**
> "Property damage" to: . . .
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .
>
> **I. Damage to Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Doc. 17-4, 24; *Napierkowski Aff. Ex. 2* (bold in original)).

**2. Continental Policy**

The Continental policy is a commercial umbrella policy. The parties agree that the policy covers "property damage" that is caused by an "incident." (Doc. 23, ¶ 15.) Gabe's asserts that it is entitled to coverage under this section. The policy defines "incident" as: "With respect to . . . 'property damage,' incident means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at ¶16). Property damage is described in language identical to the National policy. (*Id.* at ¶ 17.)

Like the National policy, the Continental policy contains a "your work" exemption:

"Your work" is defined as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made with respect to the fitness, quality, durability, performance or use of "your work" and the providing of or failure to provide warnings or instructions.

(Doc. 17-4, 24; *Napierkowski Aff. Ex. 2.*)

The parties agree that the definitions of the relevant terms are essentially the same in the two policies, and so the analysis is identical.

**C. The Present Dispute**

The parties dispute the extent to which the above language provides coverage for the underlying litigation. National and Continental assert that they do not have the duty to defend or indemnify Gabe's in the underlying litigation. The insurance companies assert that the National policy does not cover the underlying claim, as it "only provides coverage for 'bodily injury' or 'property damage' that is caused by an 'occurrence.' . . . "'Occurrence' is defined . . . . as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" (Doc. 19, ¶¶ 7-8). Similarly, the insurance companies maintain that the Continental policy "only provides coverage for 'bodily injury' or 'property

damage' that is caused by an 'incident.'" . . . 'with respect to 'bodily injury' and 'property damage' incident means an occurrence.'" (*Id.* at ¶¶ 11-12.) The insurance companies argue that what is described in the counter-claim against Gabe's in the underlying suit does not constitute an "occurrence."  Furthermore, they argue that even if it did constitute an occurrence, the damages that Pocono Township alleges is not property damage, and the claim would fall under the "your work" exemptions in both policies.

Gabe's disagrees with National and Continental's characterizations, and asserts that the policies do indeed cover the underlying litigation.  Gabe's maintains that the allegations in the cross-claim against Gabe's constitute an "occurrence," as described by the policies. (Doc. 23.) Furthermore, the "significant damages" that Pocono Township alleges constitutes "property damage" as defined in the policies.  (Doc. 23, ¶ 18.)

Gabe's accepts that of the three remaining claims in the underlying suit, only one–breach of warranty–is an "occurrence" as set out by the policies.  (Doc. 29, 7.)  However, because one claim is covered, National and Continental must defend the entire suit.

**D. Procedural History**

On August 11, 2014, Plaintiffs National and Continental initiated this action by filing a Complaint (Doc. 1) against Gabe's in the Middle District of Pennsylvania, requesting declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Plaintiffs requested a judgment declaring the rights and duties between Plaintiffs and Gabe's "with respect to the extent of Plaintiffs' obligations, if any, to defend and/or indemnify Gabe's, in connection with an underlying construction defect lawsuit brought against Gabe's."  (Doc. 1, ¶ 1.)  The Complaint lists two counts: declaratory judgment relating to duty to defend (Count I) and declaratory judgment relating to the duty to indemnify (Count II).  (*Id*. at ¶¶ 29-38.)

On September 24, 2014, following a series of special admissions and an extension of time to file an answer (Doc. 14), Gabe's filed an Answer to the complaint, in which it asserted a counterclaim against National and Continental (Doc. 15).  In the counterclaim, also a suit for declaratory relief, Gabe's requests a declaratory judgment relating to the duty

5

to defend in the underlying litigation. (Doc. 15, ¶ 16.) In its answer to the complaint, Gabe's also asserts that the questions about the duty to indemnify are not ripe for determination before liability is detemined in the underlying litigation. (*Id*. at 8.) On October 14, National and Continental filed an Answer to Gabe's Answer and Counterclaim (Doc. 16).

On October 30, 2014, Continental and National filed a Motion for Summary Judgment (Doc. 17), along with a Brief in Support (Doc. 18) and a Statement of Facts (Doc. 19). On November 13, 2014, I set a briefing schedule as requested by a joint motion of the parties (Doc. 21). On December 4, 2014, Gabe's filed a Cross-Motion for Summary Judgment (Doc. 22), along with a Statement of Facts (Doc. 23) and a Brief in Support (Doc. 25). Gabe's also filed an Answer to Plaintiff's Statement of Facts (Doc. 24).

On December 18, 2014, Continental and National filed a Reply Brief to Gabe's Cross-Motion for Summary Judgment (Doc. 26), a Statement of Facts (Doc. 27), and a Response to Gabe's Statement of Facts (Doc. 28). On January 29, 2015, Gabe's filed a Reply Brief in support of its Cross-Motion for Summary Judgment. These motions are fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary

judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the Complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a Summary Judgment Motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III. Discussion**

Gabe's and the insurance companies seek summary judgment against each other in the form of a declaratory judgment as to the rights and obligations of the parties in the underlying litigation in state court. The insurance companies request that this court declare that they are not responsible to defend Gabe's in the underlying cross-claim against it, while Gabe's asserts that the insurance companies owe it a duty to defend in that action, pursuant to the policies they issued. Gabe's maintains that "the claims in the underlying action are claims for property damage resulting from an occurrence," therefore the insurance companies are liable to defend Gabe's. The insurance companies, however, assert that the underlying litigation arose from Gabe's intentional actions which does not constitute an "accident" as contemplated by the policies, therefore, they are not liable to defend Gabe's.

Examining the evidence of record, there are no genuine disputes of material fact. Rather, the parties dispute how to properly interpret the policies at issue and underlying complaint. The Motion and Cross-Motion for Summary Judgment turn on an interpretation of the insurance policies and the underlying complaint to determine whether the policies require the insurance companies to defend Gabe's in the underlying action.

**A. Choice of Law**

In the briefs and pleadings, the parties construct arguments under both Pennsylvania and Wisconsin law. Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, No. 3:06-CV-0363, 2007 WL 4198173, at *3 (M.D. Pa. Nov. 26, 2007) *aff'd,* 562 F.3d 591 (3d Cir. 2009) (citing *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi*, 825 F.Supp. 80, 84 (E.D. Pa.1993) (citing *Crawford v. Manhattan Life Ins. Co.*, 208 Pa. Super. 150, 221 A.2d 877, 880 (1966))). Because the insurance policy contract was made in Wisconsin (Doc. 18, 9), Wisconsin law applies here.

**B. Interpretation of Insurance Contracts**

Recently, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") set how out to interpret insurance contracts under Wisconsin state law:

> The interpretation of an insurance contract is a question of law. *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 315 Wis.2d 556, 759 N.W.2d 613, 620 (2009). In Wisconsin, insurance policies are interpreted under the same rules that apply to contract construction. *See Marotz v. Hallman*, 302 Wis.2d 428, 734 N.W.2d 411, 421 (2007). The primary objective in interpreting a contract is to ascertain and carry out the intentions of the parties. *Wadzinski v. Auto–Owners Ins. Co.*, 342 Wis.2d 311, 818 N.W.2d 819, 824 (2012). The insurance policy's words shall be given their common and ordinary meaning, and when the policy language is plain and unambiguous, the policy is enforced as written, "without resorting to the rules of construction or principles from case law." *Johnson Controls, Inc. v. London Market*, 325 Wis.2d 176, 784 N.W.2d 579, 586 (2010). If the language is ambiguous, its ambiguity is construed in favor of coverage for the insured. *Id.* The language of the policy determines the extent of coverage. *Soc'y Ins. v. Town of Franklin*, 233 Wis.2d 207, 607 N.W.2d 342, 345 (Wis. Ct. App. 2000).

*Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1033 (7th Cir. 2014).

Additionally, under Wisconsin law, "insurance contracts should not be construed 'to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium.'" *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, No. 13-2785, 2015 WL 1064156, at *4 (7th Cir. Mar. 12, 2015) (quoting *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65, 73 (2004)).

**C. Duty to Defend**

**1. Standard**

The duty to defend is broader than the duty to indemnify. *BB Syndication Servs., Inc.* at *11 (applying Wisconsin law in the insurance context). "The duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim." *Id.* (quoting *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 733–35 (7th Cir. 2012)).

"Under Wisconsin law, '[a]n insurance carrier's duty to defend insured in a third-party suit. . . is predicated on allegations in a complaint which, if proved, would give rise to recovery under the terms and conditions of the insurance policy.'" *Charter Oak Fire Ins. Co.*

*v. Hedeen & Cos.*, 280 F.3d 730, 735 (7th Cir. 2002) (quoting *Elliott v. Donahue*, 169 Wis.2d 310, 485 N.W.2d 403, 407 (1992)).

In *Charter Oak Fire Insurance Company,* the Seventh Circuit examined Wisconsin law with respect to the duty to defend:

> "In determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy. We liberally construe those allegations and assume all reasonable inferences." *Doyle v. Engelke*, 219 Wis.2d 277, 580 N.W.2d 245, 248 (1998). "Any doubt as to the existence of the duty to defend must be resolved in favor of the insured." *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis.2d 235, 593 N.W.2d 445, 459 (1999). . . . [U]nder Wisconsin law, "[w]hat is important is not the legal label that the plaintiff attaches to the defendant's (that is the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis–Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994) (further citations omitted)).

*Charter Oak Fire Ins. Co.*, 280 F.3d at 735.

**2. Analysis**

Gabe's accepts that of the remaining claims in the underlying cross-claim, only one–breach of warranty–alleges "property damage" as the result of an "occurrence" as set out by the policies. (Doc. 29, 7.) However, if one claim is covered, National and Continental must defend the entire suit. If a single claim in a complaint containing multiple claims is potentially covered, the duty to defend attaches to the entire claim. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 261 Wis.2d 4, 660 N.W.2d 666 (2003).

The parties dispute whether the breach of warranty claim constitutes an "occurrence" causing property damage as defined in the policy. Gabe's argues that it does, and so the insurance companies must provide coverage; the insurance companies argue that it does not. Furthermore, the insurance companies assert that even if it does, it falls under the exception for "your work," and so is not covered.

"Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 22-5, 3.)

Gabe's maintains that the underlying litigation is covered as an occurrence because Pocono Township's underlying claim alleges physical injury to the sewer pipe, resulting significant damages. Because Pocono Township's complaint alleges that it cannot use the sewer pipes without remediation, Gabe's contends that this constitutes "resulting loss of use" from property damage as covered in the policy. Gabe's argues that this property damage resulted from an "occurrence": Gabe's encountering "several problems while installing the sewer pipe via the HDD method, including several twist offs of the drill bit." (Doc. 22-3, ¶ 337.)

An insurer's duty to defend is predicated on the allegations contained in the claim against the insured. *Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 735 (7th Cir. 2002) (citing *Elliott v. Donahue*, 169 Wis.2d 310, 485 N.W.2d 403, 407 (1992)). Upon reading these allegations, and construing the claims in favor of coverage, I find that the insurance companies do not have the duty to defend Gabe's in the underlying litigation.

Gabe's asserts that the claims in the underlying litigation are not based on faulty workmanship, but instead on damage resulting from errors in the subsurface report it was provided. However, viewing the claim, this is not apparent. Instead, it appears to be an action based on faulty workmanship, and explicitly a breach of contract claim. The counter-claim mentions the subsurface report, but only insofar as it states that the subsurface report warned drilling companies that drilling conditions would be difficult. (Doc. 22-3, ¶¶ 329-30.)

The insurance companies argue that summary judgment in their favor is warranted because a claim arising from a breach of contract claim cannot constitute an occurrence as defined in their policies. However, under Wisconsin law, "circumstances giving rise to a breach of contract or breach of warranty claim may be an 'occurrence' within the meaning of a CGL [Commercial General Liability] policy: the analysis focuses on the factual basis for the claim and not on the theory of liability." *Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 295 Wis. 2d 556, 572, 721 N.W.2d 704, 712 (2006) (citing *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis. 2d 16, 25, 673 N.W.2d 65, 69 (2004)). Thus, I focus on the claim's factual basis to determine if there was an occurrence.

Both parties cite to the Wisconsin Supreme Court's decision in *American Girl* as

instructive in this action. Indeed, the facts of this case are similar in many ways to the facts in that case: there was a "construction project gone awry," and the insurance policy clause in that case was similar to those at issue here. *Am. Family Mut. Ins. Co.*, 673 N.W.2d 65, 69. Similarly, the parties sought to determine whether the underlying claim stemming from a "construction project gone awry" fell within the meaning of the insurance policy. In *American Girl,* the Wisconsin Supreme Court found that the claim at issue did constitute an "occurrence" as defined in the policy. *Id.* at 70.

However, the claim for which the insured sought coverage in *American Girl* was different from the claim for which Gabe's seeks coverage in an important way. In *American Girl,* the Court found that a subcontractor gave faulty advice to the general contractor. "As a result, there was excessive settlement of the soil after the building was completed, causing the building's foundation to sink. This caused the rest of the structure to buckle and crack." *Id.* at 70. In this case, there is no indication in the underlying cross-claim that Gabe's received faulty advice that resulted in the alleged damage. Rather, the cross-claim alleges that Gabe's received a Subsurface Report prior to entering into the subcontract, which warned that drilling conditions would be difficult. (Doc. 22-3, ¶¶ 329-330.) This report instructed bidders to notify the contractor if different conditions were found, and Gabe never notified the contractor of different conditions. (*Id.* at ¶ 331-332.) The cross-claim does allege that Gabe's encountered problems while installing the pipe. However, according to the cross-claim, the damage that resulted–the pipes not being installed in accordance with the contract–was purely the result of Gabe's intentional actions. In *American Girl*, the damage was the result of unexpected soil settlement which occurred *after* the construction project had been completed, not because of the intentional acts of the insured contractor.

When analyzing whether there was an accident for the purposes of a liability policy, Wisconsin courts take an approach that "consider[s] whether the *insured* acted with lack of intent in a particular incident." *Schinner v. Gundrum*, 349 Wis. 2d 529, 550, 833 N.W.2d 685, 696 (2013) (italics in original). "[W]hen an insured's intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the

lack of an actual intent to damage or injure." *Id*. (quoting *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 838 (Mich. 1999)).  The cross-claim against Gabe's does not contain any allegations that Gabe's acted without intent.  Instead, it alleges a series of actions that Gabe's intentionally took, which resulted in the alleged damages.  (Doc. 22-3, ¶¶ 361-363.)  The breach of warranty claim against Gabe's is clearly based on allegations of intentional actions.  *Id.*  It does not allege "an accident, including continuous or repeated exposure to substantially the same general harmful condition," as set out in the policies.

Pennsylvania law, which both parties assert could also apply, supports the same conclusion.  The Pennsylvania Supreme Court has made clear that claims such as this one are not covered by insurance policies that cover "occurrences" and/or "accidents." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Comm'l Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 897-98 (2006).  "Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context.  To hold otherwise would be to convert a policy for insurance into a performance bond." *Id.* at 899.  The Court held that claims based on breach of contract are not covered by the language contained in the policies at issue here.  *Id.*

**D. Duty to Indemnify**

The duty to defend is broader than the duty to indemnify. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591 (3d Cir. 2009).  Thus, at this stage, the insurance companies have no duty to defend the underlying counterclaim.

### IV. Conclusion

For the above reasons, National and Continental's Motion for Summary Judgment (Doc. 17) will be granted.  Gabe's Cross-Motion for Summary Judgment (Doc. 22) will be denied.  An appropriate order follows.

| March 25, 2015 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |